UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES BROWN,

                           Plaintiff,

      v.

DDS MANESH MEWAR, and
D.A. NANCY TAPP,

                        Defendants.

_____

**DECISION**
**and**
**ORDER**
\-------------------------------------
**REPORT**
**and**
**RECOMMENDATION**

**07-CV-00551S(F)**

APPEARANCES:         JAMES BROWN, *Pro Se*
                         82-C-0099
                         Attica Correctional Facility
                         Box 149
                         Attica, New York 14011

                         ERIC T. SCHNEIDERMAN
                         Attorney General, State of New York
                         Attorney for Defendants
                         MICHAEL A. SIRAGUGA
                         Assistant New York Attorney General, of Counsel
                         Main Place Tower
                         Suite 300A
                         350 Main Street
                         Buffalo, NY 14202

## JURISDICTION

This case was referred to the undersigned by Honorable William M. Skretny on

May 6, 2010 for all pre-trial matters including preparation of a report and

recommendation on dispositive motions. The matter is presently before the court on

Plaintiff's motion to join parties (Doc. No. 28), filed April 9, 2010, and on Defendant's

motion for summary judgment (Doc. No. 30), filed April 29, 2010.[1]

## BACKGROUND

Plaintiff James Brown ("Plaintiff"), proceeding *pro se*, commenced this civil rights action on August 22, 2007, while incarcerated at Elmira Correctional Facility ("Elmira") or "the correctional facility"), alleging that Defendants Manesh Mewar, DDS ("Dr. Mewar" or "Defendant")), and dental assistant Nancy Tapp ("Tapp"), denied Plaintiff dental care in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Plaintiff specifically alleges that Defendants' failure, between December 17, 2003, and February 11, 2005, to place Plaintiff on a call-out list to have an abscessed tooth pulled caused Plaintiff pain and suffering, and rendered Plaintiff unable to eat. On April 10, 2008, Defendant filed an answer (Doc. No. 5) ("Answer").

On April 7, 2009, Plaintiff moved to amend the complaint ("First Motion to Amend"), seeking to terminate Tapp as a Defendant, and to add one John Gibson, DDS ("Dr. Gibson"), as a Defendant. By order filed May 14, 2009 (Doc. No. 11), the undersigned granted the motion to amend as to the request to terminate Tapp as a defendant, but, given that Plaintiff withdrew the request to add Dr. Gibson as a defendant, denied the request at to Dr. Gibson. On August 6, 2009, Plaintiff again moved to amend the complaint ("Second Motion to Amend"), seeking to add as defendants Elmira Superintendent Calvin West ("West"), Dr. Gibson, and all Elmira

---

[1] Although Plaintiff's motion seeking leave to join new defendants is nondispositive, and Defendant's motion seeking summary judgment is dispositive, the court addresses all arguments in this combined Decision and Order and Report and Recommendation in the interests of judicial economy.

dental department employees.  By Decision and Order filed March 17, 2010 (Doc. No. 25) ("March 17, 2010 D&O"), the undersigned, given that the claims Plaintiff sought to assert against the proposed defendants were time-barred, and Plaintiff had failed to establish that such claims against the proposed defendants would relate back to the date of the original complaint, denied Plaintiff's request to add defendants without prejudice and with leave to renew the motion should Plaintiff ascertain that the failure to name Dr.  Gibson, West, and any Elmira dental department employee as a defendant in the original Complaint was based on a mistake, rather than on a lack of knowledge as to the identities of such parties.  March 17, 2010 D&O at 9.  As such, to date, Dr. Mewar is the sole defendant in this action.

On April 9, 2010, Plaintiff filed a new motion (Doc. No. 28) ("Plaintiff's motion"), seeking to add as defendants Dr. Gibson, West, and "all employees that was [*sic*] employed at Elmira Correctional Facility dental Dept.  From December 17, 2003 until February 11, 2005."  Plaintiff's motion is supported by the attached Memorandum of Law in Support of Plaintiff's Motion for Joinder of Other Parties to Plaintiff's Complaint Pursuant to Federal Rules Civil Procedure Rule 20(1)(A)(B) 28 U.S.C.A. ("Plaintiff's Memorandum").

On April 29, 2010, Defendant filed Defendant's Motion for Summary Judgment (Doc. No. 30) ("Defendant's motion"), along with supporting papers, including the Declaration of Manesh Mewar, DDS, in Support of Defendant's Motion for Summary Judgment (Doc. No. 31) ("Defendant's Declaration"), attached to which are exhibits A and B ("Defendant's Exh(s). __"), the Statement of Undisputed Facts in Support of Defendant's Motion for Summary Judgment (Doc. No. 32) ("Defendant's Statement of

Facts"), and the Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Doc. No. 33) ("Defendant's Memorandum").

On May 3, 2010, Defendant filed the Memorandum of Law in Opposition to Plaintiff's Motion to Amend Complaint (Doc. No. 34) ("Defendant's Response"). In further support of Plaintiff's motion, Plaintiff filed on May 13, 2010, the Response to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Amend Complaint (Doc. No. 38) ("Plaintiff's Reply"). On June 4, 2010, Plaintiff filed the Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 39) ("Plaintiff's Response"), attached to which are exhibits A through J ("Plaintiff's Exh(s). __"). In further support of summary judgment, Defendant filed on June 25, 2010, the Reply Declaration of Michael A. Siragusa in Support of Defendant's Motion for Summary Judgment (Doc. No. 40) ("Siragusa Reply Declaration"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion for leave to add defendants (Doc. No. 28) is DENIED; Defendant's motion for summary judgment (Doc. No. 30), should be DENIED.


## **FACTS**[2]

This action concerns attempts by Plaintiff James Brown ("Plaintiff" or "Brown")), for more than two years, to obtain dental treatment for an abscessed tooth while housed at two different state correctional facilities. On February 23, 2003, while

---

[2] Taken from the pleadings and motion papers filed in this action.

incarcerated at Great Meadow Correctional Facility ("Great Meadow"), Plaintiff filed an Inmate Grievance ("Great Meadow Grievance"), complaining he had been denied dental treatment since August 10, 2002, for an abscessed tooth on the left side of his mouth. Plaintiff, in his Great Meadow Grievance, does not identify the dental staff employee who failed to provide treatment at Great Meadow. Plaintiff did not receive any treatment for the abscessed tooth while incarcerated at Great Meadow. In November 2003, without having received any dental treatment as a result of the Great Meadow Grievance, Plaintiff was transferred to Elmira Correctional Facility ("Elmira" or "the correctional facility").

On December 17, 2003, Defendant Manesh Mewar, DDS ("Dr. Mewar"), a dentist then employed by New York State Department of Correctional Services ("DOCS"), was assigned to Elmira, examined Plaintiff, inserting a partial upper denture into Plaintiff's mouth. Although Plaintiff maintains that after Dr. Mewar inserted the denture, Plaintiff complained about his abscessed upper back tooth, according to Dr. Mewar, Plaintiff stated only that he was satisfied with Dr. Mewar's dental work and that Dr. Mewar advised Plaintiff's next dental appointment would be made at Plaintiff's request. Dr. Mewar Declaration ¶ 7 and Plaintiff's Dental Records[3] dated December 17, 2003 (Dr. Mewar's treatment remarks: "Inserted P/. Pt is satisfied. NA @ pt request").

In a letter to Elmira Superintendent West, dated February 10, 2004, Plaintiff complains that despite being advised by Dr. Mewar in December 2003 that Plaintiff

---

[3] Defendant's Exh. A.

would be placed on Elmira's dental call-out list for extraction of Plaintiff's abscessed tooth, for which Plaintiff's gum was so swollen that he was unable to eat or to close his mouth, Plaintiff had yet to be scheduled for the necessary dental treatment. Plaintiff's Exh. D. On October 6 and 12, 2004, Plaintiff submitted to the Elmira dental department, written letters advising that despite numerous requests to the dental department, for which Plaintiff was repeatedly advised by someone from the dental office that Plaintiff's name had been put on the dental call-out list for treatment, Plaintiff had yet to receive treatment for an abscessed tooth, for which Plaintiff's gum was so swollen that Plaintiff was unable to close his mouth, and was so painful that Plaintiff could not eat, and Plaintiff had to squeeze blood and pus from the gum to obtain some relief by lessening the swelling and pain. Plaintiff's Exhs. B (dated October 6, 2004, bearing date stamp indicating its receipt on October 7, 2004), and C (dated October 12, 2004, bearing date stamp indicating its receipt on October 13, 2004). In his October 12, 2004 letter, Plaintiff also threatened to file an inmate grievance against Elmira's dental department based on the continued failure to arrange for treatment of Plaintiff's abscessed tooth. Plaintiff's Exh. C. Nevertheless, Plaintiff did not file any inmate grievance at that time.

On October 14, 2004, Dr. Mewar was assigned to Five Points Correctional Facility ("Five Points"), and, at that time, no longer assigned to Elmira. As such, Dr. Mewar neither responded to Plaintiff's letters, nor provided any dental care to inmates at Elmira after October 14, 2004. Plaintiff maintains he was unaware that Dr. Mewar left Elmira on October 14, 2004. Plaintiff's Response at 4.

The next entry in Plaintiff's Dental Records is dated February 4, 2005, and

indicates that Dental Assistant Nancy Tapp ("D.A. Tapp") was making arrangements for Plaintiff to be escorted for a dental screening. Plaintiff's Dental Records at 3. On February 9, 2005, Plaintiff filed an Inmate Grievance ("Elmira Grievance")[4] asserting that despite repeatedly requesting, since December 2004, to see the dentist, Plaintiff had not been placed on the call-out list. Plaintiff continued that he had a toothache and an abscess, could not eat, was in pain, and could not sleep. *Id*.

Later on February 9, 2005, after filing the Elmira Grievance, Plaintiff was placed on Elmira's dental call-out list and examined by Dr. Gibson who remarked Plaintiff complained of an upper molar being swollen and partially dislodged, but asymptomatic after taking antibiotics "on his own." Plaintiff's Dental Records at 3. According to Dr. Gibson, Plaintiff had no alveolar bone left to secure the tooth. *Id*. Plaintiff agreed with Dr. Gibson's recommendation that the tooth be extracted at Plaintiff's next appointment. *Id*. According to the record, when Plaintiff was examined by Dr. Gibson on February 9, 2005, Plaintiff had already filed the Elmira Grievance. Plaintiff's Memorandum at 2-3; Plaintiff's Response at 5. Plaintiff, in opposition to summary judgment, asserts that Dr. Gibson, rather than extracting Plaintiff's abscessed tooth on February 9, 2005,

> sent plaintiff back to his cell to suffer in pain for two more days before calling plaintiff back to the dentist office to pull the tooth. This is a practice of the dental dept. and Dr. Gibson did this because I had complained about not receiving dental treatment.

Plaintiff's Response at 5.

Plaintiff further maintains that after being sent back to his cell on February 9, 2005, he had to treat his abscessed tooth by "squeez[ing] pus and blood out of the gum in order

---

[4] A copy of the Elmira Grievance is attached to the Complaint.

to get the swollen [*sic*] to go down" and by taking medication and antibiotics prescribed for other inmates "over a four year period when relief was readily available in the dental office." *Id*.

On February 10, 2005, Dr. Gibson responded to the Elmira Grievance ("Elmira Grievance Repsonse")[5] by stating that he had examined Plaintiff the previous day, February 9, 2005, and had scheduled Plaintiff to return on February 11, 2005, to have his tooth extracted. Elmira Grievance Response. Dr. Gibson further stated that Plaintiff "has dropped 5 slips to our office all with different dates however 2 were received on 1/31/05 and 3 were received on 2/8/05, in one envelope." *Id*. In each of the five dental call-out request slips received by the Elmira dental office,[6] Plaintiff complains of a toothache with bleeding gums. The dental call-out requests are dated December 9, 2004, December 15, 2004, January 10, 2005, January 21, 2005, and February 8, 2005. The two earliest dental call-out requests bear date stamps indicating their receipt in Elmira's dental office on January 31, 2005, and the latter three dental call-out requests bear date stamps indicating their receipt on February 8, 2005.

On February 11, 2005, Dr. Gibson extracted Plaintiff's abscessed tooth.[7] Plaintiff's Dental Records at 3. Dr. Gibson noted that Plaintiff's next appointment would be at Plaintiff's request. *Id*.

---

[5] A copy of the Elmira Grievance Response is attached to the Complaint.

[6] Copies of the five dental call-out slips are attached to the Elmira Grievance Response.

[7] The court takes judicial notice that the tooth that was the subject of Plaintiff's Great Meadow grievance is the same tooth Dr. Gibson extracted on February 11, 2005. *See Brown v. Bascomb*, 2008 WL 4283367, * 2 (N.D.N.Y. Sept. 16, 2008) ("The tooth was extracted in February 2005 after Brown was transferred to Elmira Correctional Facility . . . ."). *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, (2d Cir. 2009) (taking judicial notice of judicial opinions in related proceedings).

Plaintiff's Medical Records[8] for the relevant time period – December 17, 2003

through February 11, 2005 – establish that Plaintiff received medical treatment on at

least 37 occasions, mostly for chronic back pain.  Absent from Plaintiff's Medical

Records is any indication the Plaintiff made any complaints about a toothache.  Further,

absent from Plaintiff's dental records is any reference to any dental worked performed

at Great Meadow, despite the fact that it was at Great Meadow where Plaintiff was fitted

for the partial upper denture which Dr. Mewar inserted on December 17, 2003 at Elmira.

*Brown*, 2008 WL 4283367, at * 1.


## DISCUSSION

### 1.    Permissive Joinder

Moving pursuant to Fed.R.Civ.P. 20(a) ("Rule 20(a)"), Plaintiff seeks to add as

Defendants Elmira Superintendent Calvin West ("West"), John Gibson, DDS ("Dr.

Gibson"), all Elmira dental department employees from December 17, 2003 until

February 11, 2005 ("the proposed defendants").  Plaintiff's Memorandum at 2.  In

opposition, Defendant argues that Plaintiff's motion should be denied as futile because

the claims Plaintiff seeks to assert against the proposed defendants are time-barred,

Defendant's Memorandum at 3-4, and are not subject to the "relation back" doctrine.

*Id*. at 5-10.  In further support of his motion, Plaintiff asserts that the claims he seeks to

assert against the proposed defendants would relate back to the date of the filing of the

original complaint,  Plaintiff's Reply at 2-3, and Plaintiff's original complaint was timely

---

[8] Defendant's Exh. B.

9

filed.  *Id*. at 3-5.  The following discussion demonstrates Plaintiff's motion is futile and is therefofe DENIED.

As relevant, Rule 20(a) provides that persons may be joined in one action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20(a)(2).

Because the allegations Plaintiff, in the instant motion filed April 9, 2010, seeks  to assert against the proposed defendants occurred "from December 17, 2003 until February 11, 2005," such claims are time-barred under the three-year limitations period applicable to Plaintiff's § 1983 claims, *Zapata v. City of New York*, 502 F.3d 192, 194 n. 3 (2d Cir.  2007) (citing *Pearl v. City of Long Beach*, 296 F.2d 76, 79 (2d Cir.  2002)), unless Plaintiff can establish, pursuant to Fed.R.Civ.P. 15(c), that such claims relate back to the filing of the original Complaint on August 22, 2007.  *Barrow v. Whethersfield Police Dept.*, 66 F.3d 466, 469-70 (2d Cir. 1995).

As relevant, Rule 15(c)(1) provides that an amendment to a pleading relates back to the filing of the original pleading if

> (B)  the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
> (C)  the amendment changes the party of the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> > (i)  received such notice of the action that it will not be prejudiced in defending on the merits; and

<blockquote>
(ii)    knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity*.
</blockquote>

Fed.R.Civ.P. 15(c)(1) (italics added).

In the instant case, Defendant neither contests nor concedes that Plaintiff, by seeking to add the proposed defendants, also seeks to assert claims arising out of the same conduct pleaded in the original Complaint, in satisfaction of Rule 15(c)(1)(B), or that the addition would be prejudicial to the proposed defendants. Rather, Defendant's opposition to Plaintiff's motion is that the claims against the proposed defendants will not relate back to the filing of the original Complaint turns on Rule 15(c)(1)(C)(ii), *i.e.*, that, but for a mistake concerning the proper party's identity, the proposed defendants knew or should have known the action would have been brought against them, and, as such, the claims against the proposed defendants are time-barred. Defendant's Response at 4-10. In further support of his motion, Plaintiff maintains that his failure to name the proposed defendants in the Complaint was the result of Plaintiff's mistaken belief that he had named the proposed defendants in the Complaint, and Plaintiff's mistaken understanding that "under the law all person[s] who worked in the dental dept. would be considered defendants in the complaint which would also include all persons that plaintiff complained to that took no action to correct the problem." Plaintiff's Reply at 2 (bracketed material added).

    The Second Circuit has held that Rule 15(c)(1)'s requirement "that a defendant 'knew' he was not named due to a mistake concerning identity presupposes that in fact the reason for his not being named was a mistake in identity." *Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994). In particular,

Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities. Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), *but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake*.

*Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 470 (2d Cir. 1996) (italics added)

It is significant that in *Barrow*, the Second Circuit held that Rule 15(c)'s requirements for relation back were not met where the plaintiff sought to substitute named plaintiffs for "John Doe" defendants because the plaintiff was seeking to correct a lack of knowledge, rather than to correct a mistake regarding the defendants' identities. *Id*. Put another way, where an amendment is sought to add new defendants, the amendment will not relate back to the filing date of the Complaint, and thus avoid being time-barred, "if the newly-added defendants were not named originally because the plaintiff did not know their identities." *Barrow*, 66 F.3d at 470. Instead, where a plaintiff seeks to add a defendant whom the plaintiff, although aware of the purported unlawful misconduct, was not required to sue, the plaintiff's failure to name the person as a defendant "must be a matter of choice, not mistake." *Robinson*, 23 F.3d at 705.

The record in the instant case belies Plaintiff's assertion of mistake for his failure to name the proposed defendants as Defendants when the Complaint was filed on August 22, 2007. In particular, attached to Plaintiff's motion papers is a copy of Dr. Gibson's Elmira Grievance Response, dated February 10, 2007, in which Dr. Gibson states that he had examined Plaintiff the previous day, February 9, 2005, and had scheduled Plaintiff to return on February 11, 2005, to have his tooth extracted, and also mentions receiving on January 31, 2005, two of Plaintiff's five dental call-out requests,

and the other three on February 8, 2005.  Elmira Grievance Response.  Plaintiff does

not dispute that it was Dr. Gibson who, upon examining Plaintiff on February 9, 2005,

recommended extracting Plaintiff's abscessed tooth, which Dr. Gibson did on February

11, 2005, as established by Plaintiff's dental records.  As such, there can be no doubt

that when Plaintiff filed the Complaint on August 22, 2007, Plaintiff was aware that Dr.

Gibson was the dentist who examined Plaintiff on February 9, 2005, and then extracted

Plaintiff's abscessed  tooth two days later on February 11, 2005, such that Plaintiff's

failure to name Dr. Gibson as a defendant was not the result of mistaken identity, and

Plaintiff's failure to name Dr. Gibson as a defendant "must be considered a matter of

choice, not mistake."  *Cornwell*, 23 F.3d at 705 (exhibit attached to original complaint

established plaintiff's "obvious knowledge and detailed nature" of the identity and

conduct of individual whom plaintiff sought to add as a defendant beyond the expiration

of the relevant statute of limitations such that the amended complaint could not relate

back to the filing of the original complaint).

Similarly, Plaintiff's assertion that he seeks to add as defendants all Elmira

dental department employees because such employees repeatedly ignored Plaintiff's

many written requests to be placed on Elmira's dental call-out list for treatment of

Plaintiff's abscessed tooth does not to establish that Plaintiff's failure to name them as

defendants was a mistake because Plaintiff was mistaken about their identities.

*Barrow*, 66 F.3d at 470.  In fact, Plaintiff's vague and all-inclusive reference to such

prospective defendants as "all employees that was [*sic*] employed at Elmira

Correctional Facility dental Dept. From December 17, 2003 until February 11, 2005"

Plaintiff's Motion at 2, establishes that Plaintiff's lack of knowledge as to the identity of

each individual Elmira dental department employee did not prevent Plaintiff from naming them in the Complaint.

Nor does Plaintiff argue that he mistakenly believed that someone other than West was the Superintendent of Elmira during the time Plaintiff's maintains he was unlawfully denied dental treatment. In fact, attached as Exhibit D to Plaintiff's Response filed in opposition to Defendant's motion is a copy of a letter Plaintiff sent to West, dated February 10, 2004, complaining that despite informing Dr. Mewar of Plaintiff's abscessed tooth in December 2003, Plaintiff had yet to be placed on the dental call-out list. Plaintiff's February 10, 2004 letter to West thus establishes that Plaintiff was well aware that West, and no other person, was Superintendent of Elmira at all time relevant to this action.

Furthermore, that Plaintiff has previously moved to add as defendants, Dr. Gibson on April 7, 2009, First Motion to Amend, and West, Dr. Gibson, and all Elmira dental department employees on August 6, 2009, Second Motion to Amend, establishes that Plaintiff has long known that the proposed defendants were not named as Defendants to this action. Accordingly, the failure to previously name the proposed defendants as defendants to this action could not have been based on Plaintiff's mistaken belief as to the proper identity of the proposed defendants.

As such, the record does not support a finding that Plaintiff's failure to name Dr. Gibson, "all Elmira dental department employees" and West as defendants resulted from mistaken identity. Adding such persons as Defendants at this time would contravene the statute of limitations and it thus futile. Plaintiff's Motion seeking to amend the Complaint to add defendants is DENIED.

## 2. Summary Judgment

In support of summary judgment, Defendant argues that Plaintiff's claim against is barred because (1) Plaintiff has failed to exhaust administrative remedies as to the claim, Defendant's Memorandum at 3-7; (2) the applicable statute of limitations has run, *id.* at 7; (3) Defendant Dr. Mewar was not personally involved in the alleged violation of Plaintiff's civil rights, *id.* at 8-10; (4) Plaintiff cannot establish the requisite elements of an Eighth Amendment deliberate indifference claim, *id.* at 10-15; and (5) Defendant is qualifiedly immune from liability on the claim, *id.* at 15-18. In opposition to summary judgment, Plaintiff argues (1) he did exhaust administrative remedies as to the claim against Defendant, Plaintiff's Response at 4-6; (2) the applicable statute of limitations had not run, *id.* at 6-7; (3) Dr. Mewar was personally involved in the alleged constitutional violation, *id.* at 7-9; (4) Plaintiff has established both the objective and subjective elements of a deliberate indifference claim, *id.* at 9-10; and (5) Defendant is not qualifiedly immune from liability on the claim, *id.* at 10-12. In further support of summary judgment, Defendant asserts that Plaintiff's opposition to Defendant's Motion is insufficient to avoid summary judgment. Siragusa Reply Declaration ¶ 3.

Summary judgment on a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). The party moving for summary judgment bears the burden of establishing the nonexistence of any

genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322.

Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor and "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (citing cases). Rather, Fed. R. Civ. P. 56(e) requires that

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

"[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996). Furthermore, because Plaintiff is proceeding *pro se*, the court is required to liberally construe Plaintiff's papers submitted in opposition to summary judgment. *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2009) ("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'") (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006))

Defendant Dr. Mewar is alleged to have violated Plaintiff's civil rights under 42

U.S.C. § 1983, pursuant to which an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. Section 1983, however, "'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Id.*  (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, *supra*, at 140).  In the instant case, the Complaint alleges Defendant violated Plaintiff's under the Eighth Amendment by exhibiting deliberate indifference to Plaintiff's serious medical need, *i.e.*, failing to timely and properly treat Plaintiff's abscessed tooth causing Plaintiff to suffer pain and rendering Plaintiff unable to eat.  Complaint, First Claim.

### A.    Exhaustion of Administrative Remedies

Defendant argues that Plaintiff failed to exhaust administrative remedies with regard to the Eighth Amendment deliberate indifference claim asserted against Dr. Mewar.  Defendant's Memorandum at 3-7.  In particular, Defendant maintains that although relevant DOCS regulations require inmates to file inmate grievances within twenty-one days of the occurrence at issue, Plaintiff's Elmira Grievance, filed on February 9, 2005, was filed more than one year after Plaintiff allegedly complained about his tooth to Dr. Mewar on December 17, 2003, and more than twenty-one days after Dr. Mewar transferred from Elmira to Five Points on October 14, 2004.  *Id.* at 6.  In

opposition to summary judgment, Plaintiff maintains that he did not file his Elmira Grievance earlier because he continued to receive notes from the dental department in response to Plaintiff's requests to be placed on the dental call-out list. Plaintiff's Repsonse at 4-5.

Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, exhaustion of all available administrative remedies is required before a § 1983 civil rights action challenging prison conditions, including excessive force and prison grievance claims, may be commenced. 28 U.S.C. § 1997e; *Macias v. Zenk*, 495 F.3d 37, 40 (2d Cir. 2007) ("'the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). An inmate's failure to exhaust administrative remedies prior to commencing legal action is an affirmative defense, the burden of which is the defendants to prove. *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004) (citing *Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002)).

Exhaustion of administrative remedies under the PLRA must be in compliance with the relevant state agency's procedures. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Attempts to informally resolve issues do not satisfy the PLRA's exhaustion requirement because they do not allow for "proper exhaustion," including putting the proper prison officials on notice of the alleged problem and avoid litigation. *Macias*, 495 F.3d at 44 (citing

18

*Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)).

In New York, the administrative exhaustion procedure is promulgated by the Commissioner of DOCS. N.Y. Corr. Law § 139. (providing that DOCS commissioner shall establish grievance resolution committees in each correctional institution under the commissioner's jurisdiction, and "promulgate rules and regulations establishing such procedures for the fair, simple and expeditious resolution of grievances as shall be deemed appropriate, having due regard for the constitutions and laws of the United States and of the state of New York."). Accordingly, the Commissioner has established a three-step review process, 7 N.Y.C.R.R. § 701.5 ("Inmate Grievance Procedures"), which an inmate must exhaust prior to commencing a § 1983 action. *Reyes v. Punzal*, 206 F.Supp.2d 431, 432 (W.D.N.Y. 2002).

Significantly, the Inmate Grievance Procedures require that an inmate must submit a complaint regarding the grievance "within 21 calendar days of an alleged occurrence on an inmate grievance complaint form . . . . " 7 N.Y.C.R.R. § 701.5(a)(1). In the instant case, although Plaintiff alleges that he first complained of his abscessed tooth to Dr. Mewar on December 17, 2003, Plaintiff does not deny that he did not file his Elmira Grievance until February 9, 2005, more than one year after Dr. Mewar treated Plaintiff, and almost four months after Dr. Mewar's reassignment to Five Points. As such, Plaintiff's Elmira Grievance was filed well beyond the 21-day period allowed under 7 N.Y.C.R.R. § 701.5(a)(1).

The Second Circuit, however, recognizes three circumstances in which the failure to comply with the PLRA's exhaustion requirement will not bar an inmate's civil rights action. *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004). These circumstances

occur

> when (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

*Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).[9]

In the instant action, a liberal construction of Plaintiff's papers, *Triestman*, 470 F.3d at 474-75, establishes material issues of fact requiring an evidentiary hearing as to whether Defendant is estopped from raising Plaintiff's failure to exhaust, or whether special circumstances justify Plaintiff's failure to exhaust.

## 1. Estoppel

Because Plaintiff sues under federal law, "federal law principles of equitable estoppel are applicable." *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 725 (2d Cir. 2001) (citing *Wall v. Constr.& Gen. Laborers' Union, Local 230*, 224 F.3d 168, 175-76 (2d Cir. 2000)). "The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or

---

[9] Although the Second Circuit indicated in *Ruggiero*, 467 F.3d at 176, that it had yet to determine what effect the Supreme Court's holding in *Woodford*, 548 U.S. at 81 (requiring "proper exhaustion" of administrative remedies "using all steps that the agency holds out, and doing so *properly*." (italics in original)), the Second Circuit recently vacated and remanded a district court's grant of summary judgment dismissing an inmate's civil rights action on the basis that the inmate plaintiff had failed to exhaust administrative remedies because the district court had failed to conduct the three-step inquiry set forth in *Hemphill* to determine whether the inmate's failure to exhaust was excusable. *Cosme v. Furman*, 374 Fed.Appx. 232, 233 (2d Cir. 2010). *Cosme* strongly suggests the Second Circuit considers *Hemphill's* three-step inquiry is still relevant regardless of any suggestion to the contrary by *Woodford*.

conduct.  *Id*. (citing *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir.  1996)).

"Under federal law, a party may be estopped from pursuing a claim or defense where:

1) the party to be estopped makes a misrepresentation of fact to the other party with

reason to believe that the other party will rely upon it; 2) and the other party reasonably

relies on it; 3) to her detriment."  *Id*.  (citing cases).  Whether estoppel applies presents

an issue fo fact precluding summary judgment requiring an evidentiary hearing.  *Id*.

(citing *Bennett v. United States Lines, Inc.*, 64 F.3d 62, 65 (2d Cir. 1995)).

 Here, Plaintiff asserts that he did not file his Elmira Grievance earlier because he

had been advised to attempt to informally resolve the problem by sending written

requests to be placed on Elmira's dental call-out list, and that each time Plaintiff

submitted such written request, he was advised by someone in Elmira's dental

department that Plaintiff would be placed on the list.  Plaintiff's Response at 4-6.  In

support of this assertion, Plaintiff submits a copy of a directory listing the proper party to

whom inmates were directed to write to resolve any problem the inmate was having.

Plaintiff's Exh. G.  The directory lists the correctional facility's dentist as the person to

whom an inmate experiencing a dental problem should write.  *Id*.  Furthermore, Plaintiff

submits copies of seven requests for dental treatment, including two bearing date

stamps indicating they were received in Elmira's dental office on October 7, 2004,

Plaintiff's Exh. B, and October 13, 2004, Plaintiff's Exh. C, prior to Dr. Mewar's

departure on October 14, 2004.[10]  Although Defendant denies being aware of these

requests for dental treatment, Dr. Mewar Declaration ¶¶ 8, 10, Defendant does not

_____

 [10] The other three requests bear date stamps indicating they were not received by Elmira's dental office until after Dr. Mewar's departure.  Plaintiff's Exhs. E and F.

deny that the date stamps indicate the requests were, in fact, received in Elmira's dental office.  Significantly, Dr.  Mewar does not deny that upon receiving a request for dental treatment, Elmira's dental office would have been responsible for responding to such requests.  This record thus contains a material issue of fact as to whether Plaintiff was, as Plaintiff claims, repeatedly advised by someone in Elmira's dental department that he had been placed on the dental call-out list and would soon receive treatment, such that Plaintiff did not need to timely file an inmate grievance regarding the continued denial of treatment, therefore establishing Defendant is equitably estopped from reliance on Plaintiff's failure to file a grievance within 21 days following Defendant's lack of response to Plaintiff's requests for dental treatment made between December 17, 2003 and February 9, 2005.

### 2.      Special Circumstances

The record also establishes an issue of fact as to whether special circumstances excuse Plaintiff's failure to timely file an inmate grievance regarding the failure to timely treat Plaintiff's abscessed tooth.  *Ruggiero*, 467 F.3d at 175.  In particular, attached as Exhibit J to Plaintiff's Response is a copy of Plaintiff's Great Meadow Grievance filed on February 23, 2003, while incarcerated at Great Meadow, in which Plaintiff maintains he has been denied dental treatment for an abscessed tooth on the left side of his mouth. The court takes judicial notice that the tooth that was the subject of Plaintiff's Great Meadow Grievance is the same tooth Dr. Gibson extracted on February 11, 2005, *see Brown v. Bascomb*, 2008 WL 4283367, * 2 (N.D.N.Y. Sept.  16, 2008) ("The tooth was extracted in February 2005 after Brown was transferred to Elmira Correctional Facility . .

. ."), establishes that Plaintiff's filing of the Great Meadow Grievance failed to result in Plaintiff being provided any dental treatment for his abscessed tooth. That Dr. Mewar denies ever providing Plaintiff with further treatment after December 17, 2003, implies that Plaintiff's repeated requests to Elmira's dental office also were ignored. Nor does Defendant challenge Plaintiff's assertion that he was unaware that Dr. Mewar had left Elmira. Although Plaintiff, in his October 12, 2004 complaint to Elmira's dental office, threatened to file a grievance if treatment of his abscessed tooth was not scheduled, Plaintiff's Exh. C, that Plaintiff's earlier filed Great Meadow Grievance was ignored, combined with the instructions from DOCS that inmates try to informally resolve problems and Plaintiff's lack of awareness that Dr. Mewar was no longer practicing at Elmira, could be interpreted by a reasonable trier of fact as justifying Plaintiff's failure to file his Elmira Grievance prior to Dr. Mewar's departure.

Accordingly, although Plaintiff never timely exhausted administrative procedures with regard to his claim against Dr. Mewar, material issues of fact exist as to whether Plaintiff's failure to exhaust is excused by Defendant's conduct, thus estopping Defendant's affirmative defense, or by special circumstances justifying Plaintiff's failure to strictly comply with the PLRA's administrative exhaustion requirement, and summary judgment should therefore be DENIED. An evidentiary hearing to determine whether Plaintiff's failure to exhaust administrative remedies is excusable should be scheduled, with counsel appointed to represent Plaintiff at the hearing. *Murray v. Palmer*, 2010 WL 1235591, at * 4 and n. 20 (N.D.N.Y. Mar. 31, 2010) (holding exhaustion of administrative remedies is matter to be resolved by court at pretrial hearing, citing cases); *see Mastroianni v. Reilly*, 602 F.Supp.2d 425, 430 (E.D.N.Y. 2009) (appointing

counsel to represent inmate plaintiff on evidentiary hearing as to whether to dismiss action for failure to exhaust administrative remedies).

Because the matter is before the undersigned for a report and recommendation on Defendant's Motion, the court considers Defendant's other arguments in support of summary judgment in the alternative should the District Judge disagree with the initial recommendation.

### B.    Statute of Limitations

Defendant maintains that because Plaintiff only encountered Dr. Mewar one time, on December 17, 2003, when Dr. Mewar fitted Plaintiff with a partial upper denture, yet the instant action was not filed until August 22, 2007, the action was not filed within three years of the alleged occurrence – Dr.  Mewar's failure to place Plaintiff on the dental call-out list for extraction of Plaintiff's abscessed tooth – and, as such, is time-barred.  Defendant's Memorandum at 7.  In opposition, Plaintiff argues that Dr. Mewar had repeated encounters with Plaintiff through the dental call-out requests Plaintiff repeatedly sent to the dental department, and inferentially Dr. Mewar, which Plaintiff further maintains the dental department received and filed.  Plaintiff's Response at 6-7.

New York's three-year statute of limitations for personal injuries governs civil rights actions brought under § 1983.  *Owens v. Okure*, 488 U.S. 235, 251 (1989); *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir.1995).  Plaintiff's claim against Dr.  Mewar initially accrued on December 17, 2003, when Dr. Mewar fitted Plaintiff with a partial upper denture but did not treat Plaintiff's abscessed tooth, and, according to Plaintiff,

continued to accrue until October 7, 2004, when Dr. Mewar received and filed a request for dental call-out Plaintiff submitted on October 6, 2004. Plaintiff's Exh. B. Although Dr. Mewar denies ever receiving this request, Dr. Mewar Declaration ¶¶ 8, 10, Defendant does not challenge the authenticity of the copy of the requests Plaintiff filed in opposition to summary judgment. As such, Dr. Mewar's denial of ever receiving or being aware of any request from Plaintiff for further dental treatment, specifically, extraction of an abscessed tooth, starkly contrasts with the copy of Plaintiff's written request, dated October 6, 2004, eight days before Dr. Mewar's assignment to Five Points, raising a credibility issue for the finder of fact. *In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009) (denying summary judgment based on credibility issues because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Anderson*, 477 U.S. at 255)).

Because a genuine question exists as to whether Plaintiff submitted the October 6, 2004 request to Dr. Mewar seeking further dental treatment, as well as whether Dr. Mewar ever received such request prior to October 14, 2004, when Dr. Mewar ceased practicing at Elmira upon being reassigned to Five Points, the court cannot say, as a matter of law, whether or not Plaintiff's Complaint, filed August 22, 2007, was timely filed within three years of Dr. Mewar's alleged deliberate indifference to Plaintiff's dental care by failing to supply timely and adequate dental treatment of Plaintiff's abscessed tooth given that the Second Circuit has, for some time, recognized that such failure to treat an abscessed tooth may raise a deliberate indifference claim in violation of the Eighth Amendment. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)

(denying defendants' motion to dismiss *pro se* inmate's Eighth Amendment deliberate indifference claim based on allegations that abscessed tooth caused "'great pain' for a least as six months, that he has been unable to chew properly," and stating "[a]ny person who has spent a night tossing and turning in suffering from an abscessed tooth know that dental pain can be excruciating and severe."). Accordingly, Plaintiff's motion should be DENIED insofar as Plaintiff maintains the claim against Dr. Mewar is time-barred.

###   C.   Personal Involvement

Defendant argues that the claim must be dismissed because Dr. Mewar was not personally involved in the alleged denial of adequate medical care. Defendant's Memorandum at 8-10. In opposition to summary judgment, Plaintiff asserts that the copies of the dental call-out requests Plaintiff submitted to the Elmira dental department, addressed to Dr. Mewar, establish that Dr. Mewar was aware that Plaintiff was complaining about intense pain caused by an abscessed tooth which needed to be extracted. Plaintiff's Response at 7-8 (citing Plaintiff's Exhs. B, C, D, and E).

To establish liability under § 1983, a plaintiff must show the defendant was personally involved in the alleged constitutional violation. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). A defendant may be personally involved in a constitutional violation if the defendant either directly participates in the alleged violation or, as a supervisory official, after learning of the violation through a report or appeal, fails to remedy the violation, creates, or allows to continue, a policy or custom under which the violation occurs, or is grossly negligent in managing subordinates who

caused the violation. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986). Personal involvement is a question of fact, however, such that "summary judgment may be granted only if no issues of material fact exist" permitting judgment as a matter of law in favor of the defendant. *Id*. at 323.

In the instant case, the exhibits Plaintiff submits in opposition to Defendant's motion preclude summary judgment in favor of Defendant based on a lack of personal involvement. In particular, such exhibits include copies of written requests from Plaintiff to the Elmira dental department, prior to Dr. Mewar's departure on October 14, 2004, advising that despite numerous requests to the dental department, Plaintiff had yet to receive treatment for an abscessed tooth, for which Plaintiff's gum was so swollen that Plaintiff was unable to close his mouth, and was so painful that Plaintiff could not eat, and Plaintiff had to squeeze blood and pus from the gum to obtain some relief by lessening the swelling and pain. Plaintiff's Exhs. B (dated October 6, 2004, bearing date stamp indicating its receipt on October 7, 2004), and C (dated October 12, 2004, bearing date stamp indicating its receipt on October 13, 2004). Plaintiff also submits a copy of a letter sent to Superintendent West, and D (dated February 10, 2004, bearing date stamp indicating its receipt on February 12, 2004), in which Plaintiff complains that despite being advised by Dr. Mewar in December 2003 that Plaintiff would be placed on Elmira's dental call-out list for extraction of Plaintiff's abscessed tooth, for which Plaintiff's gum was so swollen that he was unable to eat or to close his mouth, Plaintiff had yet to be scheduled for the necessary dental treatment. These exhibits, which Defendant does not challenge, call into question whether Dr. Mewar was, in fact, aware of Plaintiff's need for dental treatment, yet failed to arrange for

Plaintiff's abscessed tooth to be extracted. Dr. Gibson's diagnosis and treatment of the tooth as severely abscessed is circumstantial evidence that Plaintiff's condition had lasted for some time, including the period that Plaintiff was under Dr. Mewar's care. Accordingly, Defendant's motion for summary judgment on the basis that Defendant was not personally involved in the alleged constitutional violation of Plaintiff's Eighth Amendment right to adequate medical care should be DENIED.

### D. Elements of Eighth Amendment Claim

Defendant argues that Plaintiff is unable to establish both the objective and subjective elements necessary for an Eighth Amendment deprivation of medical care claim. Defendant's Memorandum at 10 (citing *Hathaway v. Coughlin*, 37 F.3d 63 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995). Although Defendant concedes that debilitating pain and tooth loss can be sufficiently serious as to meet the objective element of an Eighth Amendment claim, Plaintiff was never, as a result of a deprivation of treatment, placed in a condition of urgency that may produce death, degeneration, or extreme pain, as required for the objective element. *Id*. at 10-12. Defendant further maintains that Plaintiff cannot prove that Defendant acted with a sufficiently culpable state of mind to establish the requisite subjective element. *Id*. at 12-15 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In opposition to summary judgment, Plaintiff maintains the record establishes both the objective element given that the gum surrounding the abscessed tooth was so swollen as to push the tooth out of the gum, rendering Plaintiff unable to close his mouth and causing so much pain that Plaintiff could not eat, and the subjective element insofar as Dr. Mewar, despite observing

Plaintiff's abscessed tooth on December 17, 2003, and receiving numerous requests to extract the abscessed tooth, never scheduled an extraction of the tooth, resulting in Plaintiff's continual suffering until February 11, 2005.  Plaintiff's Response at 9-10.

The Eighth Amendment prohibits "cruel and unusual punishments" during imprisonment.  U.S. Const. 8th amend.; *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Romano v. Howarth*, 998 F.2d 101, 104 (2d cir. 1993).  Deliberate indifference to an inmate's serious medical needs is within the ambit of the Eighth Amendment protection. *Trammell v. Keane*, 338 F.3d 155, 162 (2d Cir. 2003) (observing different tests for evaluating Eighth Amendment claims for excessive force, conditions of confinement, and denial of medical care).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  *Chance*, 143 F.3d at 702 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (bracketed text in original)).  In addition to death, a serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."  *Chance*, 143 F.3d at 702.  The standard for determining whether there has been an Eighth Amendment violation based on deliberate indifference to a prisoner's serious medical needs

> incorporates both objective and subjective elements.  The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison officials acted with a sufficiently culpable state of mind.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 104, and *Hathaway v. Coughlin*, 99 F.3d 550. 553 (2d Cir. 1996)).

Denying or delaying access to medical care or intentionally interfering with

prescribed treatment may constitute deliberate indifference. *Estelle*, 429 U.S. at 104; *see Harrison v. Barkley*, 219 F.3d 132, 138 (2d Cir. 2000) (holding dentist's outright refusal for one year to treat a cavity, a degenerative condition tending to cause acute pain if left untreated, combined with imposition of an unreasonable condition on such treatment, could constitute deliberate indifference on the part of the prison dentist, precluding summary judgment in defendant's favor). Such delay in treatment violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards by intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05. Further, culpable intent requires the inmate establish both that a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes v. New York City Department of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer*, 511 U.S. at 834-35).

Nevertheless, neither "inadvertent failures to provide adequate medical care" nor "negligence in diagnosing or treating a medical condition" comprise Eighth Amendment violations. *Estelle*, 429 U.S. at 105-06 (holding medical malpractice does not become a constitutional violation merely because the victim is a prisoner); *Harrison*, 219 F.3d at 139 ("We agree that the mere malpractice of medicine does not amount to an Eighth Amendment violation."). A "mere disagreement" with a physician over the appropriate course of treatment does not arise to a constitutional violation, although in certain instances a physician may evince deliberate indifference by consciously choosing "an easier and less efficacious" treatment plan. *Chance*, 143 F.3d at 703. Regardless,

"[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id*.

As to the objective prong, a sufficiently serious condition is "a condition of urgency, one that may produce death, degeneration or extreme pain." *Hathaway*, 99 F.3d at 66. With regard to an alleged Eighth Amendment deliberate indifference claim based on a denial of dental treatment, the Second Circuit has held that although dental conditions "may be of varying severity," where the denial of dental treatment for a dental condition causes great pain for at least six months, the inability to properly chew, deterioration of additional teeth, resulting in the need to extract teeth, the condition is sufficiently serious as to be one of urgency. *Chance*, 143 F.3d at 702-03. Similarly, in the instant case, sufficient evidence in the record establishes that Plaintiff's abscessed tooth, for which Plaintiff has submitted evidence that he endured since at least February 2003, presents medical urgency that might produce not death, but degeneration or extreme pain, including an inability to eat. As such, construing the evidence, including Plaintiff's averments, in the light most favorable to the nonmovant, Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, as required on summary judgment, *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005), establishes that Plaintiff's abscessed tooth constituted a sufficiently serious condition as defined under the Eighth Amendment. The record also establishes an issue of fact as to whether Defendant was aware that Plaintiff suffered from an abscessed tooth, yet failed to timely and adequately extract the tooth, so as to establish the objective prong of an Eighth Amendment failure to treat claim. *Smith*, 316 F.3d 183-84 (2d Cir. 2003); *Chance*, 143 F.3d at 703. Significantly, nothing in the record contradicts the condition of Plaintiff's

31

abscessed tooth as described by Plaintiff in Plaintiff's Great Meadow Grievance, filed February 23, 2003, including that the tooth was so infected that the gum was swollen and bleeding, a fact which is relevant to Dr. Mewar's awareness of Plaintiff's need for further dental treatment on December 17, 2003, and beyond.

Summary judgment as to Plaintiff's claim that Defendant acted with deliberate indifference to his serious medical needs by failing to provide timely and adequate dental care, in particular, the timely extraction of Plaintiff's abscessed tooth, should be DENIED.

### E.    Qualified Immunity

Defendant maintains that he is qualifiedly immune from liability on Plaintiff's claim. Defendant's Memorandum at 15-18. In opposition, Plaintiff maintains that Defendant, by failing to provide Plaintiff with necessary dental treatment, engaged in conduct which a reasonable person would understand violated Plaintiff's Eighth Amendment right, and thus is not entitled to qualified immunity in this action. Plaintiff's Response at 10-11.

Qualified immunity shields law enforcement officials who perform discretionary functions from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable prison official would have known. *Pearson v. Callahan*, __ U.S. __, 129 S.Ct. 808, 815 (2009) (citing Harlow *v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Washington Square Post No. 1212 v. Maduro*, 907 F.2d 1288, 1291 (2d Cir. 1990). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on

mixed questions of law and fact.'" *Pearson*, 129 S.Ct. at 815 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson*, 129 S.Ct. at 815 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). It is important to resolve immunity questions at the earliest possible stage of litigation to preserve the purpose of qualified immunity, *i.e.*, ensuring that insubstantial claims against government officials are resolved prior to discovery. *Id*. (citing cases). *See Saucier v. Katz*, 533 U.S.194, 200 (2001) ("Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." (internal quotation omitted)).

Resolution of a government official's qualified immunity claim involves a two-prong analysis, including (1) whether the plaintiff has alleged a deprivation of a constitutional right; and (2) whether such right was clearly established at the time of the defendant's alleged misconduct. *Pearson*, 129 S.Ct. at 815-16; *Saucier*, 533 U.S. at 201. Here, with regard to the first prong, Plaintiff's claim that he was deprived of necessary dental treatment for an abscessed tooth alleges deprivation of his Eighth Amendment right to adequate medical care. *Chance*, 143 F.3d at 702-03. Furthermore, given that Chance was decided in 1988, Plaintiff's right to treatment of his alleged serious dental condition was established by the time Plaintiff relevant to Plaintiff's claim.

Under these circumstances, a reasonable jury, looking at the evidence in the light most favorable to Plaintiff, and drawing all inferences in favor of Plaintiff, could find that Defendant, by failing to timely treat Plaintiff's abscessed tooth, knowingly violated

Plaintiff's Eighth Amendment right to adequate medical care.  As such, Defendant cannot establish he is qualified immune from liability in the instant case, and summary judgment should be DENIED on this ground.


## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc.  No.  28) seeking to add defendants is DENIED.  Defendant's motion for summary judgment (Doc.  No.  30) should be DENIED.  An evidentiary hearing on whether Plaintiff's failure to administrative exhaust his claim is excusable should be scheduled, with counsel appointed to represent Plaintiff as such hearing.


SO ORDERED, as to Plaintiff's
motion for leave to add defendants.

/s/ *Leslie G. Foschio*
_____
          LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Respectfully submitted, as to Defendant's
motion for summary judgment,

    /s/ *Leslie G. Foschio*
    _____
          LESLIE G. FOSCHIO
    UNITED STATES MAGISTRATE JUDGE

DATED:      February 14, 2011
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     February 14, 2011
           Buffalo, New York